United States District Court
For the Northern District of California

1
2
3
4                        UNITED STATES DISTRICT COURT
5                        NORTHERN DISTRICT OF CALIFORNIA
6
7   JASON DAVID YONAI,
                                              No. C 06-5217 PJH (PR)
8                    Petitioner,
                                              **ORDER DENYING PETITION
9     vs.                                     FOR WRIT OF HABEAS
                                              CORPUS**
10  M. S. EVANS, warden, et al.,
11                   Respondents.
                                        /
12
13        This is a habeas case filed pro se by a state prisoner challenging a finding by prison
14  officials that, on January 27, 2005, petitioner violated prison rules by threatening prison
15  staff members.  In the court's initial review order, it dismissed petitioner's second and third
16  claims because they did not state a cognizable basis for federal relief, but ordered
17  respondent to show cause why the petition should not be granted based on petitioner's first
18  claim, which alleged the violation of his right to due process in connection with the
19  disciplinary proceedings.  Respondent then filed an answer with a supporting memorandum
20  of points and authorities and exhibits.  Although granted an opportunity to do so, petitioner
21  did not file a traverse.  For the reasons set out below, the petition is denied.
22                                    **BACKGROUND**
23        On March 29, 2005, a disciplinary hearing was held at Salinas Valley State Prison
24  ("SVSP") on charges brought against petitioner for threatening prison officials.  Resp. Ex.
25  D.  According to the Rules Violation Report ("RVR") issued in connection with this
26  discipline, on January 27, 2005, petitioner attended a hearing before the Institutional
27  Classification Committee ("ICC") regarding the status of petitioner's placement in
28  administrative segregation.  *Id.*  Petitioner had previously been placed in administrative

1  segregation based on various violations of prison rules, none of which are challenged

2  herein.  At the January 27 hearing, petitioner stated that he would be "taking care of" prison

3  guards if he was released back into the general population.  *Id.*  Deputy Warden Travers

4  asked petitioner what he meant, and petitioner "aggressively" stated, "I will get all you

5  motherfuckers, just release me from AD/SEG and you will find out just exactly what I

6  mean."  *Id.*  The hearing was terminated, and petitioner was informed that he could be

7  disciplined for his statements as constituting threats to prison staff.  *Id.*

8      On February 21, 2005, a copy of the RVR was sent to petitioner setting forth the

9  charges against him, and petitioner signed it.  *Id.*  Correctional Officer Bailey appeared at

10  the March 29, 2005, disciplinary hearing and stated that petitioner "refused" to attend the

11  hearing.  *Id.* A plea of not guilty was entered for petitioner.  *Id.*  Petitioner had been

12  appointed a staff assistant, and he had waived appointment of an additional "investigative

13  employee."  *Id.*  At the disciplinary hearing, petitioner was found guilty of the charges based

14  on the report of Correctional Officer Martines, who stated that he was present at the

15  January 27 ICC hearing and observed petitioner aggressively making the threats to the

16  correctional staff described above.  *Id.*  Petitioner was reprimanded and referred for

17  possible placement in the Secured Housing Unit ("SHU"), but he was not assessed  the

18  forfeiture of any time credits in connection with this rule violation.  *Id.* In a report prepared

19  by Travers and the other ICC members about the January 27, 2005 hearing, they

20  corroborated Martines's account of petitioner's threats.  Resp. Ex. E.  In the instant petition,

21  petitioner denies threatening anyone at the ICC hearing, and claims that he did not receive

22  notice, refuse to attend the hearing, or receive staff assistance.

23      Petitioner unsuccessfully challenged the disciplinary decision in habeas corpus

24  petitions filed in the California Courts.  The parties do not dispute that petitioner has

25  exhausted his state court remedies with respect to the claims raised herein.

26  **STANDARD OF REVIEW**

27      A district court may not grant a petition challenging a state conviction or sentence on

28  the basis of a claim that was reviewed on the merits in state court unless the state court's

**United States District Court**
For the Northern District of California

adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*,  537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).  When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n.2 (9th Cir. 2000).

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DISCUSSION

The claim remaining herein is that petitioner's due process rights were violated in connection with his disciplinary proceedings when he was not allowed to present a defense, did not receive notice, and was not afforded staff investigative assistance.

### I.   Proper Remedy

As an initial matter, the petition must be denied because petitioner's claims do not challenge the fact or duration of his confinement.  Traditionally, challenges to prison conditions have been cognizable only via 42 U.S.C. § 1983, while challenges implicating the fact or duration of confinement must be brought through a habeas petition.  *Docken v. Chase*, 393 F.3d 1024, 1026 (9th Cir. 2004).  "Habeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence."  *Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003); *see also Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991) (civil rights action is proper method of challenging conditions of confinement).

In his petition, petitioner had alleged, without supporting documentation, that prison officials took away time credits when they disciplined him for the January 27, 2005 incident. The court liberally construed this allegation as establishing that his claims implicate the fact or duration of his confinement because of the alleged loss of time credits.  *See Butterfield v. Bail*, 120 F.3d 1023, 1024 (9th Cir. 1997) (parole or time credit claim affects the legality or duration of a prisoner's custody, a determination of which may likely result in entitlement to an earlier release, and must be brought in habeas); *Young v. Kenny*, 907 F.2d 874, 876-78 (9th Cir. 1990) (same).  However, the disciplinary records state that petitioner forfeited zero time credits as a consequence of being found guilty of threatening prison staff members.  Resp. Ex. D.  Petitioner provides no documentation in support of his allegation to the contrary.  As the disciplinary records indicate that petitioner did not lose time credits as a result of the disciplinary proceedings, his claims challenging the constitutionality of those proceedings do not implicate the fact or duration of his confinement.  As such,

4

**United States District Court**
For the Northern District of California

1    petitioner's claims do not set forth cognizable grounds for federal habeas relief. [1]

2    **II.    Due Process**

3        In addition, petitioner's claims must be denied, because the records of the

4    disciplinary proceedings establish that his right to due process was not violated.  To begin

5    with, it is not clear whether the disciplinary action even implicates his right to due process.

6    The placement of a California prisoner in isolation or segregation, or the assessment of

7    good-time credits against him as a result of disciplinary proceedings, may trigger

8    procedural protections required by due process provided that, among other things, the

9    petitioner suffered a deprivation of "real substance." *Sandin v. Conner*, 515 U.S. 472, 477-

10   87 (1995).  As discussed above, the RVR indicates that petitioner did not lose any time

11   credits after being found guilty of threatening staff.  Resp. Ex. D.  Moreover, while the RVR

12   referred him for possible placement in the SHU, there is no record as to whether petitioner

13   was actually placed in the SHU, or otherwise segregated or isolated from other prisons.

14   *See id.*; see also *Serrano*, 345 F.3d at 1078 (even placement in segregated housing

15   without more does not implicate a protected liberty interest).  As a consequence, it is not

16   clear what deprivation petitioner suffered as a consequence of the disciplinary proceedings

17   being challenged here, let alone whether the deprivation was of "real substance" so as to

18   implicate his right to due process.

19       Nevertheless, even assuming petitioner's due process rights were implicated, the

20   records of such proceedings indicate that he was afforded all of the procedures required by

21   due process.  There are five procedural requirements of due process for prison disciplinary

22   proceedings.  *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  First, "written notice of

23   the charges must be given to the disciplinary-action defendant in order to inform him of the

24   charges and to enable him to marshal the facts and prepare a defense."  *Id.* at 564.

25   Second, "at least a brief period of time after the notice, no less than 24 hours, should be

26

27   _____

28       [1]Where there has been no loss of time credits, the proper avenue for challenging
     disciplinary actions by prison officials is in a civil rights complaint under 42 U.S.C. § 1983,
     in which challenges to conditions of confinement may be made.

**United States District Court**
For the Northern District of California

allowed to the inmate to prepare for the appearance before the [disciplinary committee]."
*Id.* Third, "there must be a 'written statement by the factfinders as to the evidence relied on
and reasons' for the disciplinary action." *Id.* Fourth, "the inmate facing disciplinary
proceedings should be allowed to call witnesses and present documentary evidence in his
defense when permitting him to do so will not be unduly hazardous to institutional safety or
correctional goals." *Id.* at 566. Fifth, "[w]here an illiterate inmate is involved . . . or where
the complexity of the issues makes it unlikely that the inmate will be able to collect and
present the evidence necessary for an adequate comprehension of the case, he should be
free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the
staff or from a[n] . . . inmate designated by the staff." *Id.* at 570.

Petitioner's complaint is that he did not receive notice of the hearing, he was not
allowed to present a defense at the hearing, and he was not afforded staff assistance. The
disciplinary records indicate, however, that petitioner was given notice of the charges
against him when he was given the initial copy of the RVR on February 21, 2005, which he
signed, over a month prior to the hearing. Resp. Ex. D. The RVR also indicates that
petitioner was allowed to present a defense insofar as he was offered the opportunity to call
witnesses, which he declined, and to be present at the hearing, which he refused. *Id.*
Petitioner complains that he was absent from the hearing, but an inmate's presence at the
hearing is not one of the five procedural requirements set forth in *Wolff, see* 418 U.S. *at*
564-70 and petitioner cites no authority from the United States Supreme Court or the Ninth
Circuit, and this court is not aware of any, establishing such a requirement.[2] Finally, a staff
member, Officer V. Garcia, was, in fact, assigned to assist petitioner at the hearing, and he

---

[2]Some circuits have recognized a prisoner's right to attend his own disciplinary
hearing, *see Battle v. Barton*, 970 F.2d 779, 782 (11th Cir. 1992); *Moody v. Miller*, 864 F.2d
1178, 1180 (5th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1987), but the
right is not absolute, *see Battle*, 970 F.2d at 782-83. More importantly, under 28 U.S.C. §
2254(d)(1), federal habeas relief is only available based on "clearly established" Supreme
Court precedent, not on circuit-based law. *Williams*, 529 U.S. at 412; *see, e.g., Carey v.
Musladin*, 549 U.S. 70, 77 (2006) (finding no clearly established law where Supreme Court
had not spoken on the question of the inherently prejudicial effect of spectator courtroom
conduct).

United States District Court

For the Northern District of California

was offered but declined assignment of an additional investigative employee to assist him. *Id.* In addition, there is no dispute that, as documented by the RVR, prison officials issued a written opinion outlining the evidence supporting the finding that he had threatened staff members at the January 27, 2005 hearing. *Id.*

In addition to the necessary procedural safeguards, the evidentiary requirements of due process were also met. The findings of the prison disciplinary board must be supported by "some" evidence in the record. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). The standard for the modicum of evidence required is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. *Id.* at 455. In addition, there must be some indicia of reliability of the information that forms the basis for prison disciplinary actions. *See Cato v. Rushen*, 824 F.2d 703, 704-05 (9th Cir. 1987). Here, the evidence supporting the conviction consisted of the account by witnesses to the threats – Martines, Travers and the four other ICC members – that petitioner stated he was going to "tak[e] care of" and "get" the ICC officials, whom he called "motherfuckers", when he was released from administrative segregation into the prison's general population. Resp. Exs. D, E. Prison officials could certainly rely on these eyewitness accounts as evidence to find that petitioner had threatened them. Consequently, there was more than sufficient evidence to meet the standard of some reliable evidence supporting the disciplinary decision. *See e.g. Bruce v. Ylst*, 351 F.3d 1283, 1287-88 (9th Cir. 2003) (finding that any one of three pieces of evidence supporting administrative segregation in that case -- a sheriff's department report that prisoner was a gang member, a probation report that prisoner's codefendant was a gang member, and a statement from a prison informant -- would satisfy the "some evidence" requirement of due process).

Petitioner also argues that he did not in fact threaten the staff member, and that he is innocent of the charges. The fact that a prisoner may have been innocent of the charges does not raise a due process issue; the Constitution demands due process, not error-free decision-making. *See Ricker v. Leapley,* 25 F.3d 1406, 1410 (8th Cir. 1994); *McCrae v. Hankins*, 720 F.2d 863, 868 (5th Cir. 1983).

1    In sum, to whatever extent petitioner's right to due process was implicated by the

2  disciplinary proceedings, the records of such proceedings indicate that the procedural and

3  evidentiary requirements of due process were met.  Accordingly, the state courts' denial of

4  petitioner's due process claim was neither contrary to or an unreasonable application of

5  federal law, and petitioner is not entitled to habeas relief.

6                                        **CONCLUSION**

7    For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.  The

8  Clerk shall close the file.

9            **IT IS SO ORDERED.**

10  Dated: March 13, 2009                    _____
                                            PHYLLIS J. HAMILTON
11                                           United States District Judge

22  G:\PRO-SE\PJH\HC.06\YONAI217.RUL.wpd

**United States District Court**
For the Northern District of California